**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 25-cr- 327 (LLA)** |
| | **:** | |
| **AVERY ROBINSON,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING[1]**

Avery Robinson pled guilty to one count of Carjacking, in violation of 18 U.S.C. § 2119 in relation to a violent armed carjacking that took place on September 20, 2025. Robinson terrorized the victim when he approached him and threatened to shoot him if he did not hand over everything. For the reasons set forth below, the Government recommends a sentence of 72 months' incarceration, followed by five years of supervised release.

**BACKGROUND**

On September 20, 2025, within the District of Columbia, Avery Ricardo Robinson III took a motor vehicle—a 2017 Nissan Altima bearing VIN 1N4AL3AP6HC243434—that had been transported, shipped, or received in interstate or foreign commerce, from the person and presence of the victim, by force and violence or intimidation, with the intent to cause death and serious bodily harm.

Specifically, in the early morning of September 20, 2025, the victim parked the Nissan Altima in the vicinity of 1438 Park Road NW in Washington, D.C.

---

[1] The Government respectfully moves the Court for leave to late file the instant memorandum. Prior counsel had left the office and undersigned counsel entered her appearance on June 11, 2026. Counsel for the defense has advised that they do not object to the instant filing.



***The Victim Parking the Nissan Altima***

The victim walked up and down the sidewalk before encountering Robinson, who rode up on a bicycle while the victim was standing by the Nissan Altima. Robinson pulled a firearm from his waistband, held the firearm in his hand, and, without preamble, demanded the victim's possessions. The victim immediately complied with Robinson's demands. The victim gave Robinson a cellphone, keys to the Nissan Altima, and a necklace. Specifically, at Robinson's direction, the victim tossed his phone on the ground. He then handed over his keys and removed his necklace when Robinson demanded more—all while Robinson brandished a firearm.

2



*Robinson Picking Up The Victim's Phone*



*Robinson with Firearm in Right Hand While Reaching Towards The Victim*



*The Victim Removing His Necklace*

Robinson then told the victim to leave and warned the victim that he would shoot the victim if he saw him again. With no phone and no car, the victim simply walked away. Shortly afterward, Robinson used the keys he obtained from the victim to get into the Nissan Altima and drive away.



*Robinson Getting in the Nissan Altima*

Police found the Nissan Altima shortly after the offense less approximately a mile from where Robinson carjacked the victim. Further, when Robinson was ultimately arrested two days later, he had a loaded handgun on him with a round in the chamber—ready to fire.

## ARGUMENT

The Government requests that the Court sentence Avery Robinson to 72 months of incarceration followed by five years of supervised release. Without any provocation, Robinson saw a lone victim in the early morning hours of September 20, 2025, cornered him, and robbed him in a terrifying and humiliating interaction.   Robinson terrorized the victim for sport, already having his own means of transportation, and he did so less than six months after being released in connection with being caught in a different stolen vehicle.   Moreover, at the time of the offense, Robinson was on bench warrant status for not one but two offenses for his use of stolen vehicles. His guilty plea confirms his knowing and intentional targeting of an unarmed victim on a deserted street while armed with a firearm. Both the Guidelines and sentencing factors pursuant to 18 U.S.C. § 3553(a) warrant the requested period of incarceration.

## I.    THE APPLICABLE SENTENCING GUIDELINES

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."   *United States v. Gall*, 552 U.S. 38, 49 (2007).   Although the Sentencing Guidelines are advisory, under *United States v. Booker*, a sentencing court "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018).   The Supreme Court has noted that while the Guidelines provide "the starting point and the initial benchmark" for sentencing, the district court should consider all the § 3553(a) factors.   *Gall v.*

5

*United States*, 552 U.S. 38, 49–50 (2007).   The Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007).

Here, Avery Robinson pled guilty to one count of Carjacking, in violation of 18 U.S.C. § 2119.   Pursuant to the plea agreement, the parties agreed that the applicable range was 63-78 months' of incarceration. Robinson has rather recent history of stealing and violent conduct, resulting in a Criminal History Category of III.

## II.    SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

In addition to the applicable guideline range, the Court should consider the factors listed in 18 U.S.C. § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed –
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for –
    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        (i) issued by the Sentencing Commission . . .; and
        (ii) that, . . . are in effect on the date the defendant is sentenced; . . .

(5) any pertinent policy statement –
    (A) issued by the Sentencing Commission . . . and
    (B) that, . . . is in effect on the date the defendant is sentenced.

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

### A. The Nature and Circumstances of the Offense

Robinson needlessly and wantonly targeted a victim minding his own business. He saw an opportunity to assert fear and power and took advantage of it to the maximum. The fact that Robinson used a firearm and took the victim's car is enough to warrant a serious period of incarceration alone. But the manner in which he effected the carjacking was particularly cruel. He forced the victim to first give up his phone by throwing it on the ground—thereby taking away the means to call for help even after Robinson was done with him. He then got in the victim's personal space—gun drawn—and patted him down while the victim stood stock still with his arms extended. Then, Robinson demanded the car keys, snatching them from the victim's hand. And finally, to add insult to injury, he demanded the necklace off the victim's neck, watching as the victim hurriedly unclasped the necklace before threatening to shoot him.

The victim walked away with just the clothes on his back—no phone and no transportation on a deserted street in the dark. Robinson then calmly got into the driver's seat of the Nissan Altima and drove away in the opposite direction of the victim. This was not a crime of desperation or heated passion; this was a crime of calculated opportunity. Robinson saw a chance to evoke fear from a vulnerable individual walking around the dark street alone.

Nothing in the record suggests mitigating circumstances for the brazen manner in which Robinson harmed a member of the community who was minding his own business. His actions suggest that he carjacked the victim for sport. He acted deliberately and in a manner designed to evoke the maximum amount of fear. Because Robinson's actions were deliberate and dangerous,

and because he effected the carjacking in a way designed to humiliate his victim, a meaningful sentence of incarceration is warranted.

### B.  Robinson's History and Characteristics

Robinson is 26 years old and is a longtime resident of this community.  Presentence Investigation Report ("PSR") ¶ 62.  According to the PSR, Robinson had the benefit of a supportive mother who worked long hours to provide for him and his siblings.  *Id.* ¶ 65.  Though he noted that absence of his father, he did acknowledge that he always had his physical needs met and never suffered physical or emotional abuse.  *Id.*  Indeed, he played football through high school and maintained a solid GPA.  *Id.* ¶ 66.  Even as an adult, his family has gone above and beyond for him.  When Robinson was arrested in the Bronx, his mother traveled all the way to New York to take custody of Robinson's son so that the son would not be placed in foster care.  *Id.* ¶ 68.  Even today, his mother has indicated her readiness and willingness to support him upon his release.  *Id.* ¶ 69.  Instead of taking advantage of the educational opportunities in his youth and the support from his family even after prior arrests, Robinson chose premeditated violence.

He also has not tried to otherwise contribute to society.  Though being in good health and able-bodied, he has not worked since 2019. *Id.* ¶ 83.  His criminal conduct and lack of willingness to be productive cannot be explained away by mental incapacity, physical incapacity or addiction.  According to the PSR, Robinson stated that he is not a fan of alcohol and does not use hard drugs, suggesting that his decision to carjack the victim was a clearheaded one.  *Id.* ¶ 78.

Further, his prior convictions and contacts with law enforcement show a pattern of violence.  In 2020, his own mother sought and received a Temporary Protective Order against him for assaulting her.  *Id.* ¶ 57.  That his own mother felt the need to seek protection was not a

wakeup call for him is alarming—his violence and disregard for others continued.

In 2023, he assaulted the mother of his child, punching her in the head and refusing to let her leave an apartment. *Id*. ¶ 34. He also threatened a custodian at a homeless shelter earlier that year, cursing at him and threatening to knock him out. *Id*. ¶ 33. He committed both of these offenses while on release for Unlawful Taking of a Motor Vehicle in Maryland, an offense for which he was ultimately convicted in 2025. *Id*. ¶ 32.

Though Robinson has been given opportunities to be on release in the community, he has squandered them. Only a month after his release from custody in connection with his Maryland conviction, in April 2025, a bench warrant was issued for his arrest for failing to report to supervision at all and for relocating without permission. *Id*. He has also been in bench warrant status since 2024 and 2025 in New York and in Maryland, respectively, in connection with his open felony cases for being caught in stolen vehicles. *Id*. ¶ 54-55. The totality of Robinson's record shows that he has been given prior opportunities on supervision and, instead of making better choices, he escalated his conduct into a violent carjacking. His background speaks of someone who made choices time and time again to commit violent offenses, who passed up opportunities to learn and work, and who did not take advantage of the lessons from prior periods of supervision. The facts reflect a concerning pattern: repeated willingness to victimize others, to steal for sport, and to flout court orders. This is not Robinson's first adult conviction, his brazenness in targeting a lone victim in the middle of the night warrants a meaningful term of incarceration.

### C. The Need for the Sentence Imposed

The requested sentence of 72 months incarceration, which represents a Guidelines

compliant term for this offense, is sufficient but no greater than necessary to meet the goals of sentencing.   The sentence provides specific deterrence, as it will directly bear on Robinson and his culpability in this offense as well as general deterrence as such a sentence of incarceration will reflect the seriousness of the offense to any others who would think to behave in such a manner. To award a lesser sentence would send the opposite signal: that individuals like Robinson can get a slap on the wrist despite using a loaded weapon to carjack and rob someone that they perceive as an easy target.

Perhaps most importantly, it will keep the community safe from any further actions by Robinson for approximately six years and hopefully give him pause before engaging in such criminal conduct after his release.   Prior shorter periods of incarceration and supervision have not slowed him down.   As such, a graduated approach to punishment is warranted here.   Moreover, Robinson is still young.   This case, his most serious conviction to date, represents a pivotal moment for him—he can continue down his current path of escalating criminal conduct.   Or he can embrace this sentence as a wakeup call and an opportunity to take advantage of the tools available during his incarceration and through U.S. Probation to put him on a better path once he is released.   To be sure, the requested sentence is weighty for an individual who has largely had the benefit of suspended sentences of incarceration in the past.   But it is also just because it represents appropriate punishment for someone who cornered his victim, threatened him with a weapon and took away his means for calling for help thereafter. This will be the longest sentence of incarceration that Robinson has received, and the Government hopes that it is enough to deter him from future crimes.

### D. The Desire to Avoid Unwanted Sentence Disparities

10

Finally, one of the goals of the Guidelines is to avoid sentence disparities among similarly situated defendants. As set forth in the PSR, for similarly situated defendants with a Criminal History Category of III and an offense level of 24, with a primary guideline of U.S.S.G. § 2B3.1, the average incarceration length was 69 months' imprisonment and the median imprisonment length was 63 months' imprisonment. *See* PSR ¶ 115.

The Government's request for 72 months is only three months greater than the average incarceration length and is particularly warranted here given the egregious manner of the carjacking and the fact that Robinson has committed similar offenses in the past. Importantly, in the instant case, Robinson did not just quickly take the victim's car. Instead, he drew out the encounter, getting into the victim's personal space with a drawn gun while patting him down and forcing the victim to take the necklace from his neck and hand it over. The victim was compliant during the interaction and still Robinson threatened to shoot him if Robinson saw the victim again. Further aggravating the situation, Robinson was on bench warrant status for two separate cases involving his presence in stolen vehicles when he carjacked the victim. This was not a violent offense against some establishment but against a person, alone, in the dark that Robinson saw fit to commit while completely flouting the orders of two other courts. In light of these factors, the Government's request for 72 months of incarceration is not inconsistent with the Sentencing Commission's data. The requested sentence also is warranted by the seriousness of the offense, the need to protect the public, and the need to promote respect for the law.

As evidenced by the Sentencing Commission's data, the Government's requested sentence of 72 months' imprisonment is measured, reasonable, driven by data, and in line with sentences given to similarly situated defendants. It also is warranted by the seriousness of the offense,

11

protects the public, and promotes respect for the law.

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court impose a sentence of 72 months of incarceration followed by five years of supervised release.

Respectfully Submitted,

Jeanine Ferris Pirro
United States Attorney

By:    */s/ Caelainn Carney*
       CAELAINN CARNEY
       Assistant United States Attorney
       N.Y. Bar No. 5751672
       United States Attorney's Office
       601 D Street, N.W.
       Washington, D.C. 20530
       Telephone: 202-714-6433
       Email: caelainn.carney@usdoj.gov